Charles E. FLOYD, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–970.

United States Court of Veterans Appeals.

April 17, 1996.

Sam E. Murrell, Orlando, FL, and Michael S. Fishman, Liberty, NY, were on the brief, for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Pamela L. Wood, Deputy Assistant General Counsel; and Michael R. Smalls, Washington, DC, were on the brief, for appellee.

Before HOLDAWAY, IVERS, and STEINBERG, Judges.

IVERS, Judge, filed the opinion of the Court. STEINBERG, Judge, filed an opinion concurring in part and dissenting in part.

IVERS, Judge:

Charles E. Floyd appeals a May 21, 1992, decision of the Board of Veterans' Appeals (BVA or Board) that denied an increased schedular rating for service-connected residuals of a fracture of the left mandible with temporomandibular joint pain (currently rated 10% disabling), granted an additional 10% evaluation for that condition on an extra-schedular basis, and did not reopen service connection claims for bilateral hearing loss and bilateral tinnitus secondary to the service-connected left mandible condition. *Charles E. Floyd*, BVA 92–12610 (May 21, 1992). The Court has jurisdiction over the

case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, we affirm in part and vacate in part the May 1992 decision of the BVA and remand the matter for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

The appellant served on active duty in the United States Marine Corps from September 21, 1965, to October 17, 1969. Record (R.) at 17. According to service medical records, on February 18, 1968, the appellant was struck on the left side of the mandible. R. at 46. On physical examination, "[t]here was deviation of the mandible to the left on opening." *Ibid.* In addition, "[r]adiographs ... revealed a fracture of the neck of the condyle with slight anterior angulation deformity and slight lateral displacement of the condyle." *Ibid.* The final diagnosis provided was a fracture of the mandible in the left subcondylar area. R. at 47.

On October 14, 1975, the appellant filed an application seeking service connection for a broken jawbone and hearing loss and ringing in his ears. R. at 60. A January 1976 VA special ear examination report diagnosed the appellant with a history of tinnitus, which was not confirmed by the examination, and normal hearing in the right ear and very mild neurosensory hearing loss in the left ear. R. at 73. On April 29, 1976, a VA regional office (RO) granted service connection for residuals of a fracture of the mandible (rated 0% disabling) and denied service connection for neurosensory hearing loss of the left ear and tinnitus. R. at 74–75. On January 26, 1977, the RO also denied service connection for tinnitus as secondary to a claimed nervous disorder. R. at 76.

On January 31, 1983, the appellant sought an increased evaluation for the service-connected left mandible fracture residuals and sought service connection for hearing loss and tinnitus. R. at 187. On January 11, 1984, the RO denied the appellant's claim for a higher evaluation for the left mandible fracture residuals and denied service connection for bilateral hearing loss with tinnitus. R. at 197. In describing the appellant's hearing loss and tinnitus claim, the RO rating decision stated: "The veteran claimed a hearing loss as a result of exposure to substantial noise in Vietnam, and some intermittent tinnitus without other neurological symptoms." *Ibid.* On July 22, 1985, the RO denied an increased evaluation for residual fracture of the left mandible with temporal mandibular joint pain. R. at 209. In denying an increased evaluation, the RO rating decision noted: "No separate evaluation is being given for temporal mandibular joint pain but is being included based on medical request." *Ibid.* On December 19, 1985, after the appellant filed a Notice of Disagreement (NOD), the RO increased the evaluation for residuals of a fracture of the left mandible with temporomandibular joint pain to 10% disabling. R. at 228–29. On August 19, 1988, the Board denied an evaluation greater than 10% for the service-connected residuals of a fracture of the left mandible with temporomandibular joint pain. R. at 292. The Board also denied direct service connection for defective hearing and tinnitus (due to in-service noise exposure) and service connection for sensorineural defective hearing and tinnitus secondary to the service-connected residuals of a fracture of the left mandible. R. at 293.

On August 30, 1989, the appellant sought an increased evaluation for the service-connected left mandible condition. R. at 294. On December 29, 1989, the RO denied an evaluation greater than 10% for the left mandible condition and denied service connection for headaches secondary to the left mandible condition. R. at 326–27. The RO also denied a total disability rating based on individual unemployability (TDIU rating) on a schedular basis but recommended granting a permanent and total disability rating for non-service-connected pension purposes on an extra-schedular basis under 38 C.F.R. § 3.321(b)(2). *Ibid.* On February 21, 1990, the appellant filed an NOD regarding the left mandible condition. R. at 329. In that NOD, the appellant also informed the RO that he had begun working again recently and requested readjustment of his pension benefits to reflect his employment. *Ibid.* On March 8, 1990, the RO continued its denial of an evaluation greater than 10% for the left mandible condition. *See* R. at 332.

On July 27, 1990, the appellant testified at a personal hearing before an RO hearing officer. R. at 334. At that hearing, the appellant also requested that his claim for service connection for hearing loss and tinnitus secondary to the left mandible condition be reopened. *Ibid.* On March 18, 1991, the RO hearing officer continued the denial of an increased evaluation for the left mandible condition. R. at 346–47. On August 27, 1991, the Board remanded the appellant's claims because the RO had not adjudicated the resubmitted secondary service connection claims for hearing loss and tinnitus. R. at 365–66. On November 18, 1991, the RO denied direct and secondary service connection for hearing loss and tinnitus. R. at 368. On May 21, 1992, the Board denied a schedular evaluation greater than 10% for the service-connected left mandible condition but granted an additional 10% evaluation for that condition on an extra-schedular basis. *Floyd,* BVA 92–12610, at 8. In addition, the Board did not reopen the appellant's claim for service connection for bilateral hearing loss and tinnitus. *Id.* at 8–9.

## II. ANALYSIS

### A. Left Mandible Condition

■ The appellant's claim for an increased rating for the service-connected left mandible condition is a new claim, and the Court reviews the Board's findings of fact under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Butts v. Brown,* 5 Vet.App. 532, 535 (1993) (en banc) (claim for increase is new claim); *see also Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Ibid.* The Board must base its decisions on "all evidence and material of record," 38 U.S.C. § 7104(a), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C. § 7104(d)(1). *See Douglas v. Derwinski,* 2

Vet.App. 435, 438–39 (1992) (en banc), *vacating in part on other grounds,* 2 Vet.App. 103 (1992); *Gilbert,* 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Id.* at 57.

In its May 1992 decision, the Board evaluated the appellant's left mandible condition under 38 C.F.R. § 4.150, Diagnostic Codes (DCs) 9904 and 9905. Under the former DC, malunion of the mandible warrants a 10% rating for moderate displacement, and a 20% rating for severe displacement; in addition, this DC provides that the rating is dependent on the "degree of motion and loss of masticatory function." Under the latter DC, limited temporomandibular articulation warrants a 10% rating where the interincisal range is 31 to 40 mm, a 20% rating where the range is 21 to 30 mm, a 30% rating where the range is 11 to 20 mm, and a 40% rating where the range is 0 to 10 mm.

A September 1989 VA radiologic report stated:

> Examination of the left side of the mandible fails to reveal any evidence of fracture or other significant osseous abnormality. Examination of the [temporomandibular joint] shows that there is no motion on the right side and somewhat limited motion on the left side. The condyles and fossa appear grossly normal.

R. at 314. In addition, a September 1989 VA examination report stated: "The temperomandibular [sic] joints seem to move smoothly with no palpable dislocation." R. at 316. The VA examination report noted the appellant's complaints of pain. R. at 315 ("[The appellant] states that he can not [sic] eat or sleep secondary to pain and he can only chew on the right side of his mouth."). The report also concluded with an impression of "[c]hronic left facial and jaw pain with tinnitus secondary to fracture of jaw." R. at 316. Consequently, the BVA found that the appellant's condition did not warrant an evaluation greater than 10% on a schedular basis. *Floyd,* BVA 92–12610, at 6, 8.

### 1. Duty to Assist

The September 1989 VA examination report is, however, inadequate, and this inadequacy frustrates judicial review. *See Ardison v. Brown*, 6 Vet.App. 405, 407 (1994). Once a claimant has submitted "evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded," the Board has a duty to assist the claimant in developing the facts pertinent to the claim. 38 U.S.C. § 5107(a); *see* 38 C.F.R. § 3.103(a) (1994); *Waddell v. Brown*, 5 Vet.App. 454, 456 (1993); *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). In *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991), the Court stated: "[F]ulfillment of the statutory duty to assist here includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of the prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one."

Under 38 C.F.R. §§ 4.40, 4.45 (1994), VA is directed to consider pain in assessing functional loss. *See Schafrath v. Derwinski*, 1 Vet.App. 589, 592 (1991). In *Voyles v. Brown*, 5 Vet.App. 451 (1993), the Court was presented with claims for increased evaluations of a left femur fracture and spondylolisthesis. In that case, the Court stated that certain medical reports, including a VA examination, had noted the veteran's complaints of pain, but that "they did not discuss the impact of any pain on the functional loss in [the veteran's] low back and hip." *Id.* at 453. Similarly, here, the record is replete with references to pain, the treatment for that pain, and the increasing difficulties in devising a treatment plan for that pain. In addition, the appellant testified at the July 1990 personal hearing that the pain was constant:

VET[ERAN]: It is a constant pain. It is not dull, it hurts. It is frustrating, it is unbearable.

REP[RESENTATIVE]: Okay and you don't take any medication because medication [doesn't] help[;] you drink alcoholic beverages and do exercises up to the time you get exhausted.

VET: Right.

REP: Now, what about any kind of food you eat, what kind of influence does your condition have on your eating habits?

VET: Well I can't chew. I'm like on soft foods, soup, mashed potatoes, grits, anything that I don't have to chew.

R. at 335. As this passage reflects, the pain appears to have affected the appellant's masticatory function, which is a consideration under DC 9904. Nevertheless, despite the history of pain and loss of masticatory function, the September 1989 VA examination did not discuss whether that pain had indeed resulted in ratable functional loss. In its May 1992 decision, the Board cited 38 C.F.R. § 4.45 and noted the appellant's worsening pain but did not further discuss its applicability. *Floyd*, BVA 92–12610, at 4–5. The Court will thus remand this claim to the Board for the conduct of a thorough and contemporaneous examination specifically taking into consideration and describing the effect, if any, of pain on functional and masticatory loss.

The appellant also argues that the Board failed to seek to obtain certain x-rays. Appellant's Brief (Br.) at 8. In its May 1992 decision, the Board stated: "Based on the description by the appellant at his [July 1990] hearing, we conclude that the February and April 1986 reports [received pursuant to a request by the Board] are the records he has been adamant that the VA seek." *Floyd*, BVA 92–12610, at 5. As the appellant concedes, "The VA did in fact get the records requested by Appellant but did not obtain[ ] the x-rays themselves and thus, they were never put into Appellant's claims file." Appellant's Br. at 8. The appellant does not argue that the x-ray reports are inconsistent with the x-rays or that the reports are insufficient when viewed without the x-rays. Indeed, the Board appears to have exhausted all possible efforts in seeking to obtain all relevant, specified records. *See* R. at 365. Therefore, the Court holds that the BVA's efforts to obtain the requested information fulfilled its duty to assist and provided an adequate statement of reasons or bases for its conclusion that it has done so. *See Hayes v. Brown*, 5 Vet.App. 60, 68 (1993) (in deciding issue, Court focuses "on several factors,

including VA's access to the necessary information and the attempts made by VA to obtain relevant information, as well as the cooperation of the veteran in providing information within his control"); *Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991) ("Inherent in the duty-to-assist obligation and the *Gilbert* explanation [of reasons or bases] mandate is a requirement for the Secretary to respond to a claimant's request for VA assistance one way or the other."); *Murphy*, 1 Vet.App. at 81 (BVA must support with a written statement of reasons or bases its conclusion that no duty to assist was owed to claimant).

### 2. Extra-schedular Consideration

█ This case also presents an interesting issue involving extra-schedular consideration of the appellant's left mandible condition. In its May 1992 decision, the Board sua sponte considered whether the appellant was entitled to an extra-schedular rating pursuant to 38 C.F.R. § 3.321(b)(1) (1994).

Under 38 C.F.R. § 3.321(b)(1), VA's Chief Benefits Director or the Director of the Compensation and Pension Service is authorized to approve, upon field station submission,

> an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

(In 1992, VA's Chief Benefits Director was redesignated as the Under Secretary for Benefits. Veterans' Medical Programs Amendments of 1992, Pub.L. No. 102–405, § 302(b), 106 Stat.1972 (1992). The regulation, however, does not reflect this change.) As the regulation indicates, in certain individual instances, the rating schedule will be inadequate; extra-schedular consideration permits VA to rate veterans who do not meet the criteria precisely.

In its May 1992 decision, the Board granted an additional 10% rating on an extra-schedular basis because the appellant had demonstrated that the pain attendant to his condition had markedly interfered with employment. In support of this evaluation, the Board stated:

> We find that the evidence satisfies a reasonable construction of marked interference with employment. We find that the demonstrated interference with employment is sufficient to warrant an additional 10 percent evaluation on an extra-schedular basis. We distinguish that basis for the award from a finding of 20 percent disability under a[DC] because the physical disability does not genuinely approximate the criteria for 20 percent evaluation under [DC] 9904, nor is it better analogized with a higher evaluation under [DC] 9905.

*Floyd*, BVA 92–12610, at 6.

The regulation involved, 38 C.F.R. § 3.321(b)(1), does not specifically address whether the Board is itself precluded from assigning an extra-schedular rating *in the first instance*, i.e., without prior referral by an agency of original jurisdiction to the Under Secretary for Benefits or the Director of the Compensation and Pension Service and a decision either to award or to deny an extra-schedular rating by either of those officials. As we will discuss below, upon our review of the pertinent statutes and regulations, we hold that the Board is precluded from *assigning* such a rating *in the first instance*.

Under 38 U.S.C. § 511(a), "The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." This broad authority may, in turn, be delegated pursuant to 38 U.S.C. § 512(a), which provides as follows:

> Except as otherwise provided by law, the Secretary may assign functions and duties, and delegate, or authorize successive redelegation of, authority to act and to render decisions, with respect to all laws administered by the Department, to such officers and employees as the Secretary

may find necessary. Within the limitations of such delegations, redelegations, or assignments, all official acts and decisions of such officers and employees shall have the same force and effect as though performed or rendered by the Secretary.

One such delegation of authority is found in title 38 of the Code of Federal Regulations, part 3, subpart A, which deals with VA adjudication of pension, compensation, and dependency and indemnity compensation claims. Under 38 C.F.R. § 3.100(a) (1994),

Authority is delegated to the Chief Benefits Director and to supervisory or adjudicative personnel within the jurisdiction of the Veterans Benefits Administration designated by the Director to make findings and decisions under the applicable laws, regulations, precedents, and instructions, as to entitlement of claimants to benefits under all laws administered by the Department of Veterans Affairs governing the payment of monetary benefits to veterans and their dependents, within the jurisdiction of Compensation and Pension Service.

Another such delegation of authority is found at 38 C.F.R. § 2.69 (1994), which authorizes the Chief Benefits Director (now the Under Secretary for Benefits) or the Director of the Compensation and Pension Service to approve extra-schedular evaluations under certain circumstances. The delegation of authority in this regulation is identical to that found in 38 C.F.R. § 3.321(b).

Thus, as the delegations of authority found at 38 C.F.R. §§ 3.321(b)(1) and 2.69 clearly provide, the proper procedure for extra-schedular consideration of a claim under 38 C.F.R. § 3.321(b)(1) requires consideration in the first instance by the Under Secretary for Benefits (formerly the Chief Benefits Director) or the Director of the Compensation and Pension Service.

This holding is further supported by the statute delineating the jurisdiction of the Board. Under 38 U.S.C. § 7104(a),

All questions in a matter which under section [511(a)] of this title is subject to decision by the Secretary shall be subject to one *review on appeal* to the Secretary. Final decisions on such appeals shall be made by the Board. The Board shall decide any such appeal only after affording the claimant an opportunity for a hearing. Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record *and applicable provisions of law and regulation.*

(Emphasis added.) In this case, the applicable laws and regulations provide only for assignment in the first instance of an extra-schedular rating by the individuals specified in 38 C.F.R. § 3.321(b)(1).

■ Unlike the determination involving an increased disability rating on a schedular basis, the determination involving an increased disability rating on an extra-schedular basis is subject to the procedural requirements laid out in 38 C.F.R. § 3.321(b)(1). The caselaw cited by the Secretary in his supplemental memorandum, such as *AB v. Brown*, 6 Vet.App. 35, 38 (1993), is inapposite. In a determination involving an increased disability rating on a schedular basis, the Board is not required to remand a matter to the agency of original jurisdiction for referral to the Under Secretary for Benefits or the Director of Compensation and Pension. In this case, however, 38 C.F.R. § 3.321(b)(1) acts as a funnel to channel requests for an extra-schedular rating through certain officials who possess the delegated authority to *assign* such a rating *in the first instance.* Of course, the regulation does not preclude the Board from *considering* whether referral to the appropriate first-line officials is required. Therefore, the correct course of action for the Board in extra-schedular consideration cases such as this one is to raise the issue and remand it for the proper procedural actions outlined in 38 C.F.R. § 3.321(b)(1). Indeed, this course of action is supported by a regulation governing the Board's operation. Under 38 C.F.R. § 19.9 (1994),

When, during the course of review, it is determined that further evidence or clarification of the evidence or *correction of a procedural defect is essential for a proper appellate decision,* a Section of the Board shall remand the case to the agency of original jurisdiction, specifying the action to be taken.

(Emphasis added.)

■ The procedural requirements of 38 C.F.R. § 3.321(b)(1) do not derogate from

the ability or obligation of the Board to seek out all issues which are reasonably raised from a liberal reading of the documents or oral testimony submitted prior to the BVA decision. *See EF v. Derwinski,* 1 Vet.App. 324, 326 (1991); *see also Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991). In all instances, however, the Board is obligated to follow the rules and regulations duly promulgated by the Secretary. *See* 38 C.F.R. § 20.101 (1994).

Our dissenting colleague states that the Board has the authority to assign an extra-schedular rating in the first instance. He relies, in part, on the principle of *expressio unius est exclusio alterius* ("the expression of one thing implies the exclusion of others"). *See Smith v. Brown,* 35 F.3d 1516, 1524 (Fed.Cir.1994). However, it is precisely because of this principle that we conclude that the *authority* to assign extra-schedular ratings has been specifically delegated to the Under Secretary for Benefits and the Director of the Compensation and Pension Service, not the Board, in the first instance. The relevant regulation is found in part 3 of title 38 of the Code of Federal Regulations, "which in terms of *decisions* on Veterans claims refers only to decisions by rating boards and other agencies of original jurisdiction." *Id.* at 1523. The regulation is reiterated at 38 C.F.R. § 2.69, which is concerned with the delegation of power from the Secretary. Thus, the regulations are clear about the delegation of authority in this matter. Having specifically delegated this particular authority to certain individuals, the Secretary has by necessity excluded the Board from exercising this authority in the first instance.

Moreover, it is precisely *because* the Board is also bound by the regulations under part 3 that the Board must follow the procedures imposed on the rest of VA under 38 C.F.R. § 3.321(b)(1). *See Douglas,* 2 Vet.App. at 441. Our dissenting colleague not only would give the Board the authority to do that which it cannot, but also would circumvent the procedures for exercising a specifically delegated authority, one that is delegated to specific individuals within VA in the first instance.

Contrary to our colleague's dissent, our analysis is not inconsistent with Court precedent. Neither *Bernard v. Brown,* 4 Vet.App. 384 (1993), nor *West v. Brown,* 7 Vet.App. 329 (1995) (en banc), addressed the specific regulation at issue here. More important, however, we do not hold that the assignment of an extra-schedular rating is a separate "matter." Indeed, as we have stated above, the Board is in fact obligated to consider the applicability of the extra-schedular rating regulation, but must then refer the matter for decision in the first instance by the appropriate VA officials. Therefore, the extra-schedular rating issue is always part of the same claim even though certain procedural requirements must be met in the adjudication process.

It is clear that the procedures followed by the Board in this case contravened the Secretary's own regulations. It is equally clear that the Board's action here resulted in the granting of an extra-schedular rating and thus did not result in prejudice to the veteran. Taking "due account of the rule of prejudicial error," 38 U.S.C. § 7261(b), the Court will affirm the Board's grant of an extra-schedular rating in this case.

In the instant case, the Board also erred when it considered the applicability of 38 C.F.R. § 3.321(b)(1) in the first instance without considering "whether the claimant has been given adequate notice of the need to submit evidence or argument on that question and an opportunity to submit such evidence and argument and to address that question at a hearing, and, if not, whether the claimant has been prejudiced thereby." *Bernard,* 4 Vet.App. at 394. The dissent would remand the case on the basis of this error. However, such a remand would not address the error in the Board's decision regarding its authority to assign an extra-schedular rating in the first instance. The dissent's approach would leave only the analysis presented by our dissenting colleague in his concurrence in *Fisher v. Brown,* 4 Vet.App. 405, 406–08 (per curiam) (Steinberg, J., concurring), *denying recons. of Fisher v. Principi,* 4 Vet.App. 57 (1993), to guide the Board upon readjudication and thus leave it to repeat its error of the May 1992 decision.

If the Board does proceed in compliance with the correct regulatory procedures and

the appellant then continues to appeal the extra-schedular rating aspect of this claim, the Board will be required to articulate its findings of fact and sufficient reasons or bases thereupon on the extra-schedular consideration issue. *See Ardison*, 6 Vet.App. at 409 (Court remanded extra-schedular consideration claim where Board's sole stated reasons or bases for not referring claim to appropriate VA officials were conclusory statement that veteran's claim was not so unusual and exceptional as to render application of rating schedule impractical); *Kellar v. Brown*, 6 Vet.App. 157, 161 (1994) (Court remanded claim for BVA to address extra-schedular consideration issue and to provide reasons or bases therefor); *Fanning v. Brown*, 4 Vet.App. 225, 229 (1993) (Court remanded TDIU claim for BVA to provide reasons or bases where BVA had not given extra-schedular consideration to the claim); *Fisher*, 4 Vet.App. at 60 (Court remanded TDIU claim where BVA decision did not make requisite findings of fact or provide reasons or bases for its decision regarding extra-schedular consideration of claim); *Moyer v. Derwinski*, 2 Vet.App. 289, 293–94 (1992) (Court remanded for BVA to give reasons or bases regarding potential applicability of 38 C.F.R. § 3.321(b)(1)).

The Board's failure to clearly articulate reasons or bases is not altogether unexpected, given the lack of concrete standards for assigning ratings on an extra-schedular basis. As written, 38 C.F.R. § 3.321 provides a criterion ("an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards") for determining whether extra-schedular consideration is warranted, but does not provide criteria or guidance for what percentage rating should be assigned in that event.

### B. Resubmitted Claims

In its May 1992 decision, the Board also refused to reopen claims for service connection for bilateral hearing loss and tinnitus. ▮ The appellant's claims were previously denied by a final BVA decision in August 1988. R. at 293. Pursuant to 38

U.S.C. § 5108, the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C. § 7104(b); *Stanton v. Brown*, 5 Vet. App. 563, 566–67 (1993). On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *See Colvin v. Derwinski*, 1 Vet. App. 171, 174 (1991); *see also Person v. Brown*, 5 Vet.App. 449, 451 (1993) (Court's review for new and material evidence "is limited by statute to those items added to the record after the previous final disallowance of appellant's claim"). "New evidence" is evidence that is not "merely cumulative" of other evidence on the record. *Ibid.* Evidence is "material" where it is relevant to and probative of the issue at hand and where there is a reasonable possibility that, when viewed in the context of all the evidence, both new and old, it would change the outcome. *See Sklar v. Brown*, 5 Vet.App. 140, 145 (1993); *Cox v. Brown*, 5 Vet.App. 95, 98 (1993); *Colvin*, 1 Vet.App. at 174. Second, if the BVA determines that the evidence is "new and material," it must reopen the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992). Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1). *Ibid.*

▮ In connection with the resubmitted claims, the appellant testified at a July 1990 personal hearing. R. at 338–39. At this hearing, he discussed his hearing loss and tinnitus. His testimony is cumulative of statements submitted in connection with the August 1988 BVA decision and is thus not new with regard to either the hearing loss or the tinnitus claim. As there is no other new and material evidence regarding the resubmitted hearing loss claim, the Court will affirm the Board's decision not to reopen that claim.

With respect to the tinnitus claim, an examining VA physician offered an impression in a September 1989 report: "Chronic left facial and jaw pain with tinnitus secondary to fracture of jaw." R. at 316. Since the report did not mention the appellant's hearing loss, the Court examines this newly submitted evidence only in connection with the tinnitus claim. In its May 1992 decision, the Board rejected the VA physician's impression appearing on the examination report:

> The VA examination report contains no report of any hearing, otology, or audiology examination or testing. The examiner's impression of secondary tinnitus was apparently based on the appellant's history. As such, it lacks the probity necessary to make it material evidence, especially when viewed in the context of the previously considered evidence that contradicts the examiner's clinical impression.

*Floyd,* BVA 92–12610, at 8.

Insofar as the Board focused on the lack of a specialized examination in support of the VA physician's opinion, the Board was, in effect, erroneously attacking the credibility of the evidence in violation of this Court's rule that the credibility of evidence is to be presumed for purposes of determining whether to reopen a claim. *Justus v. Principi,* 3 Vet.App. 510, 513 (1992).

However, the Board also indicated that the physician's impression was "apparently" based on the appellant's history. *Floyd,* BVA 92–12610, at 8. In *Reonal v. Brown,* 5 Vet.App. 458, 460 (1993), the Court held that a physician's opinion "appear[ed]" to rely at least in part, if not entirely, on the appellant's recitation of his medical history." The *Reonal* Court also noted that it was not clear from the record on appeal whether the physician had reviewed service medical records. *Ibid.* The Court concluded that the physician's opinion was based on "an inaccurate factual premise" and was thus not material. *Id.* at 461. The Court reiterated this holding in *Elkins v. Brown,* 5 Vet.App. 474, 478 (1993). There, the Court held that a physician's letters were not material because although the physician had "examined appellant on many occasions there [was] no

indication that [the physician] formed [his] opinion on a basis separate from appellant's recitation of his medical and service background." *Ibid.; see also Godfrey v. Brown,* 7 Vet.App. 398, 407 (1995) (Social Security Administration determination "cannot be presumed to be credible when on its face it conflicts with the lack of substantiation for it in the very medical evidence on which it is expressly premised"); *cf. Curry v. Brown,* 7 Vet.App. 59, 65–66 (1994) (physician's statement was new and material where it relied not solely on veteran's recitation of history but also on unspecified medical records and on physician's examination of veteran). Similarly, in this case, based on the examining physician's own description (R. at 315), we conclude that the VA physician relied on the appellant's account of his service and medical background. In its August 1988 decision, the BVA had already rejected the appellant's account regarding tinnitus. R. at 291–92. Therefore, since the factual premise for the appellant's claim had previously been rejected by the Board, the September 1989 VA examination report is not material, the BVA's error regarding credibility under *Justus* is harmless, and we will affirm the Board's decision not to reopen the tinnitus claim.

## III. CONCLUSION

Accordingly, upon consideration of the record, appellant's brief, and the Secretary's brief, we AFFIRM in part and VACATE in part the May 1992 decision of the BVA and REMAND the matter for readjudication consistent with this opinion.

STEINBERG, Judge, concurring in part and dissenting in part:

I basically agree with the Court's opinion, except for portions of part II.A.2, regarding the extra-schedular rating. Specifically, I disagree with the majority's conclusion that the Board of Veterans' Appeals (BVA or Board) lacked authority to award an extra-schedular rating in the first instance but rather was required to refer that matter to

the agency of original jurisdiction (AOJ).[1] My reasons are similar to those in the Secretary's August 30, 1994, memorandum. Moreover, I believe the Court has reached out to decide this issue in dictum, and, in any event, has decided it prematurely.

## A. Regulatory Interpretation

It is essential to consider the full text of the regulatory provision in question, 38 C.F.R. § 3.321(b)(1), which provides:

> (b) *Exceptional cases—*(1) *Compensation.* Ratings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Chief Benefits Director or the Director, Compensation and Pension Service, *upon field station submission,* is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

38 C.F.R. § 3.321(b)(1) (1995) (emphasis added).

At the outset, I acknowledge that the regulation is not totally clear insofar as the Board's authority to award an extra-schedular rating in the first instance. However, there is no doubt that all the adjudication regulations in part 3 of title 38 of the Code of Federal Regulations generally apply to the BVA in its adjudication of cases, even where a particular regulation does not specifically refer to the Board. *See Douglas v. Derwinski,* 2 Vet.App. 435 (1992) (en banc) ("the plain language of the statutory and regulatory provisions at issue demonstrates that Congress and [the Department of Veterans Affairs (VA)] have 'envisioned' a [Board] bound by the regulations that bind the entire Department", *id.* at 441). Of course, an exception to this general rule would be where a particular regulation expressly excluded the BVA. That is not the case here.

The regulation in question is broadly titled "Exceptional cases", 38 C.F.R. § 3.321(b). In its first sentence it establishes the basic principle for all ratings: "Ratings shall be based as far as practicable, upon the average impairments of earning capacity ...." The Board is unquestionably governed by this basic rating principle.[2] The next sentence is the particular provision at issue here. It states that the VA Chief Benefits Director

1. In this case, no explicit Notice of Disagreement (NOD) was filed as to the question of an extraschedular rating, and that question was not addressed by the Department of Veterans Affairs (VA) regional office (RO) in its December 1989 decision. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687, 102 Stat. 4105, 4122, § 402 (found at 38 U.S.C. § 7251 note); 38 U.S.C. § 7105; *see generally Hamilton v. Brown,* 4 Vet. App. 528 (1993) (en banc), *aff'd,* 39 F.3d 1574 (Fed.Cir.1994). However, the February 1990 NOD (which did not itself expressly raise the § 3.321(b) extraschedular-rating question but said that the veteran's "service[-]connected jaw condition is more severe than the 10 percent you have assigned", Record (R.) at 329) gives the Board of Veterans' Appeals (BVA or Board), in the first instance, jurisdiction to decide the merits of the extraschedular-rating question and the Court jurisdiction to review such decision because the extraschedular-rating question was subsumed within the original increased-rating claim submitted by the veteran in August 1989. It is precisely on that basis that the Court in *West v. Brown* held that the NOD filed as to the RO's denial of service connection was also an NOD as to the rating and effective-date matters which the RO had never addressed. *West,* 7 Vet.App. 329, 331 (1995) (en banc). In *Isenbart v. Brown,* the Court expressly validated an NOD as to an issue (total disability based on individual unemployability) that the RO should have but did not address when it denied a claim for an increased rating. *Isenbart,* 7 Vet.App. 537, 541 (1995), *reconsid. and en banc review den.,* 8 Vet.App. 147 (1995).

2. *See Fisher v. Brown,* 4 Vet.App. 405, 407 (1993) (per curiam order) (Steinberg, J., concurring) (as to authority of Board to review or, in the first instance, adjudicate claims for special derivative individual unemployability benefits under 38 C.F.R. § 4.16(b)).

(CBD) and the VA Director of the Compensation and Pension (C & P) Service have authority to evaluate the exceptional cases "upon field station submission". That sentence does two things: First, it **authorizes** the CBD or the C & P Service Director to award an extra-schedular rating; and, second, it **forbids** a VA regional office (RO) from doing so. The majority reads the sentence, incorrectly, as being an exclusive delegation to the named officials and therefore an implicit denial of that authority to the Board. The concluding sentence of the regulation then explains how an exceptional case is to be recognized—in terms of an "unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b)(1).

I can find no reason for concluding that the Board is not authorized to apply the first and third sentences of the regulation to provide, in the first instance, an extra-schedular rating where the criteria for such a rating are satisfied. Indeed, subject to the holding in *Bernard v. Brown,* discussed in note 9, *infra,* I believe that the Board is bound to do so when those circumstances are present. The regulatory scheme, as well as the statutory scheme addressed in part B, *infra,* does not support the majority's conclusion that the Secretary has, by inference, limited the plenary adjudicative authority of the Board. Echoing the Board's statutory grant of authority in 38 U.S.C. § 7104(a), the Secretary has provided in regulation that the Board has jurisdiction to decide "[a]ll questions of law and fact necessary to a decision . . . under a [VA-administered] law", specifically "[e]ntitlement to, and benefits resulting from, service-connected disability or death (38 U.S.C. chapter 11)". 38 C.F.R. § 20.101(a), (a)(1) (1995). That is, of course, the very benefit involved in the instant case.

The Secretary has made broad delegations of authority both to the Board Chairman

(and Vice Chairman) *"in addition to authority vested by law* . . . regulations and manuals", to authorize "assumption of appellate jurisdiction of adjudicative determination which has not become final" as well as to the CBD and supervisory or adjudicative personnel within VA's Veterans Benefits Administration to make "findings and decisions under applicable laws, regulations, precedents, and instructions, as to entitlement of claimants to benefits under all [VA-administered] laws". 38 C.F.R. §§ 2.66, 2.67 (1995) (emphasis added). However, whereas the CBD and the Veterans Benefits Administration have no direct statutory base of adjudicative authority, receiving all authority from the Secretary, the BVA, as the Secretary's delegation clearly recognizes in the emphasized language, has an independent statutory base of authority, which the Secretary has no authority to limit. (That matter is discussed in part B., below.) In contrast, the Secretary can limit the adjudicative authority of the CBD and Veterans Benefits Administration personnel and has done so in the second sentence of § 3.321(b) as to the award of extra-schedular ratings [3] by authorizing the CBD or the C & P Service Director to act as the AOJ when such a case is referred to the VA Central Office (VACO) by a field station.[4]

In view of the Board's separate jurisdictional statutory base, I believe that any limitations on the BVA's jurisdiction sought to be imposed by the Secretary by regulation would need to be express or at least clearly indicated and certainly should not be found by implication. *Cf.* 38 C.F.R. § 20.101(b) (1995) (specifically identifying types of medical determinations that are not adjudicative matters and "are beyond the Board's jurisdiction"); *Darrow v. Derwinski,* 2 Vet.App. 303, 305–06 (1992) (holding that Board lacks jurisdiction to review exercise of Secretary's unfettered discretionary authority under 38 U.S.C. § 503(a) to award equitable relief in order to remedy "administrative error").

---

**3.** *See Fisher,* 4 Vet.App. at 407 n. 2.

**4.** *See Malgapo v. Derwinski,* 1 Vet.App. 397, 399 (1991) (quoting 38 U.S.C. § 7105(b)(1) in defining agency of original jurisdiction (AOJ) as *"any*

[VA] activity . . . 'which entered the determination with which disagreement is expressed' "), *overruled in part on other grounds, Hamilton,* 4 Vet.App. at 538, 38 C.F.R. § 20.3(a) (1995).

Moreover, the majority ignores the question of affording deference to the Secretary's interpretation of his own regulations. This interpretative principle was the linchpin of the Court's recent reconsideration opinion in *Tallman v. Brown*, 7 Vet.App. 453, 463–65 (1995), *appeal filed*, No. 96–7006 (Fed.Cir. October 20, 1995). *See also Combee v. Principi*, 4 Vet.App. 78, 91 (1993), *rev'd on other grounds*, 34 F.3d 1039 (1994). Given the reasonableness of the Secretary's interpretation of his own delegations and procedural regulations dealing with internal allocations of responsibility within the Department, that interpretation is entitled to considerable deference in this Court.

As a matter of regulatory interpretation, binding precedent of the U.S. Court of Appeals for the Federal Circuit contradicts the majority's conclusion (*ante* at 96) that the Secretary's regulatory *silence* on whether the BVA must, as clearly AOJs must, refer the extra-schedular question to the VACO should be construed as imposing a limit on the BVA's authority. First, the Federal Circuit has expressly concluded that the same canons of construction that apply to statutes apply to regulations. *See Smith (William) v. Brown*, 35 F.3d 1516, 1523 (Fed.Cir.1994). In *Smith*, the Federal Circuit articulated a very strong adherence to "[t]he canon of *expressio unius est exclusio alterius* ('the expression of one thing implies the exclusion of others')". *Id.* at 1524. The court there applied that canon in determining that the regulatory reference to AOJs in 38 C.F.R. § 3.104(a) does not also include the BVA in the absence of express reference to the Board. *Ibid.* That is exactly the situation before us in the instant case where the regulation specifically delegates authority to the CBD and the C & P Director "upon field station submission" only. 38 C.F.R. § 3.321(b). Hence, the limitation on field

station authority in § 3.321(b) does not limit the Board's plenary jurisdiction.

Additionally, the Federal Circuit's opinion in *Gardner v. Brown* rejecting the Secretary's position therein did so in part on the ground that Congress had not expressly required the veteran to prove VA fault and had shown that it knew well "how to legislate expressly liability for fault and negligence." *Gardner*, 5 F.3d 1456, 1459 (Fed.Cir.1993), *aff'd*, —— U.S. ——, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). Most tellingly, in *Skinner v. Brown*, over a pointed dissent, the Federal Circuit noted that Congress had specifically referred to three different sections of the Social Security Act (SSA) in the Restored Entitlement Program for Survivors (REPS) statute, that such "express reference ... shows that Congress well knew how to incorporate the provisions of the [SSA]" and that "[i]f it had similarly intended to incorporate [other SSA sections into REPS], we presume it would have done so expressly." *Skinner*, 27 F.3d 1571, 1574 (Fed.Cir.1994). Similarly, if the Secretary had wished to limit the Board's plenary jurisdiction, he could and should have done so expressly (assuming the statutory authority to do so).[5] Accordingly, the majority's construction of the regulation in this case conflicts fundamentally with the Federal Circuit's guidance on construction of statutory and regulatory provisions.

### B. Statutory Interpretation

The majority suggests that its holding as to the meaning of § 3.321(b)(1) is "supported by the statute"; the majority cites 38 U.S.C. § 7104(a) and emphasizes the sentence requiring the Board to base its decisions on "applicable provisions of law and regulation". *Ante* at 95. Of course, that statutory language provides no support whatsoever for the Court's misinterpretation of § 3.321(b)(1) and is entirely tautological. The question of the regulation's meaning still remains.[6]

---

**5.** *See infra* note 11.

**6.** The majority's circular analysis extends to citation of another regulation, 38 C.F.R. § 19.9 (1995), to "support[ ]" its interpretation that the Board is precluded from awarding an extra-schedular rating in the first instance. *Ante* at 95–96. That regulation provides no such support since the question remains whether or not, under

§ 19.9, there was a "procedural defect" that needs to be corrected "for a proper appellate decision". 38 C.F.R. § 19.9. That the Board is required to remand to the AOJ in certain cases to correct certain procedural defects does not assist in determining whether there is a defect in a particular case (or, indeed, whether it is "procedural").

On the question of the effect of the statute, there is no **statutory** basis for concluding that the Board cannot award an extra-schedular rating as part of the appeal to it of an increased-rating claim. To begin with, the concept of extra-schedular ratings is entirely extra-statutory; it derives solely from the Secretary's general regulation-issuing authority pursuant to 38 U.S.C. § 1155 (direction to Secretary to establish rating schedule "based, as far as practicable, upon the average impairments of earning capacity") and § 501(a) (general authority for Secretary to prescribe regulations necessary or appropriate to carry out VA-administered laws that are consistent therewith).[7] With respect to increased-rating claims, a claimant presenting such a claim is presumed to be seeking the highest possible rating. *See AB v. Brown,* 6 Vet.App. 35, 38 (1993). The Court has repeatedly held that the Board is required to consider a claim under all applicable provisions of law and regulation whether or not the claimant specifically raises the applicable provision.[8] Therefore, the Board was obligated in this case to consider § 3.321(b)(1) as part of the veteran's claim for an increased rating.

That brings us to the holding in *Bernard v. Brown* not discussed by the majority (except in response to the ensuing discussion).[9] In *Bernard,* the Court held that "the Board's jurisdiction is limited to deciding questions in 'appeals' of 'a matter which under section [511(a) ] of this title is subject to decision by the Secretary' and which has been the sub-ject of a decision by an AOJ." *Bernard,* 4 Vet.App. 384, 391 (1993). In determining the Board's jurisdiction under 38 U.S.C. § 7104(a), the Court in *Bernard* concluded that on a claim to reopen under 38 U.S.C. § 5108 the new-and-material evidence question and the merits question (steps one and two under *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991)) "relate to a single claim of entitlement to VA benefits" and "are components of a single 'decision by the Secretary under a law that affects the provision of benefits by the Secretary', as referred to in section 511(a)". *Bernard,* 4 Vet.App. at 392. *Bernard* held that the Board had "appellate jurisdiction to review the veteran's claim of entitlement to benefits under section 1110" and had authority "to decide all questions presented on the record before it that were necessary to its decision on that matter." *Ibid.*[10] Thus, even though the RO had denied reopening the claim because it had found that new and material evidence had not been submitted and, therefore, the RO had not issued a decision on the merits of the claim, the Court held that the Board had jurisdiction to review the claim on the merits and that the "Board's inquiry was, therefore, not limited to the specific questions actually decided by the RO." *Ibid.*

Applying this holding from *Bernard* to the present facts, the Court should now hold that the question of an extra-schedular rating is a component of the veteran's claim for an increased rating and thus is part of the same "matter" over which the Board has jurisdic-

---

7. *See Johnson (Gary) v. Brown,* 7 Vet.App. 95, 99 (1994); *Butts v. Brown,* 5 Vet.App. 532, 539 (1993) (en banc); *see also Talley v. Derwinski,* 2 Vet.App. 282, 287–88 (1992).

8. *See, e.g., Douglas v. Derwinski,* 2 Vet.App. 435, 440 (1992) (en banc); *Douglas v. Derwinski,* 2 Vet.App. 103, 109 (1992); *Schafrath v. Derwinski,* 1 Vet.App. 589, 592–93 (1991); *Akles v. Derwinski,* 1 Vet.App. 118, 121 (1991); *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990).

9. I agree with the majority that the other holding of *Bernard* (that a claimant be given adequate notice of the need to submit evidence or argument on a question so as to ensure that his or her rights to "full and fair assistance and adjudication in the VA claims adjudication process" are protected) requires the Board to consider the procedural requirements and possible prejudice to the claimant of deciding the issue based on the evidence before the Board and that the Board erred in not considering such prejudice here before it awarded the 10% extra-schedular rating, *Bernard v. Brown,* 4 Vet.App. 384, 392–93 (1993). *Ante* at 96. However, as discussed in part C, *infra,* I believe that a remand is required to address the prejudice issue and that on remand the Board would be required to correct deficiencies in its statement of reasons or bases (under 38 U.S.C. § 7104(d)(1)) on this point. In doing so, the Board should also be required to address how it determined that an extra-schedular rating of 10%, rather than some other percentage, was appropriate. R. at 10.

10. This language, drawn from 38 U.S.C. § 7104(a), is echoed in regulation in 38 C.F.R. § 20.101(a) (1995).

tion under 38 U.S.C. § 7104(a) in the increased-rating case appealed to it. Indeed, the majority seems to concede this by stating that "the extra-schedular rating issue is always part of the same claim" (presumably meaning a claim for an increased rating), but then finds *Bernard* inapposite because it did not address § 3.321(b). *Ante* at 96–97. Of course, *Bernard* did not decide the precise issue before the Court in the instant case. The question is whether the majority's holding here is consistent with what the Court held in *Bernard* as to the Board's section 7104(a) jurisdiction. I believe it is not.[11] The language of section 7104(a) requiring the Board to base its decisions on applicable provisions of law and regulations could not detract from the adjudicatory jurisdiction granted to the BVA by law, and the majority's holding conflicts with this statutory delineation of the Board's authority.

### C. Advisory Opinion and Premature Adjudication

Finally, the Court reaches out to rule on whether the Board has authority to decide, in the first instance, the extra-schedular-rating question when resolution of that issue is not necessary to the disposition of this appeal. It is unnecessary because the majority is upholding the Board's award of a 10% extra-schedular rating and because the Board's error in failing to apply *Bernard* warrants a remand and moots the question because we do not know whether the Board would proceed to award the extra-schedular rating itself without referral to the AOJ *if* it were first to comply with *Bernard.*

Although the Court declares that it "hold[s]" that the Board is precluded from awarding an extra-schedular rating in the first instance, *ante* at 94, no amount of saying so makes it so; rather, the Court has digressed into an area of analysis that is pure dictum—an advisory opinion—on the question of the Board's authority. A holding as to the Board's lack of authority would compel the Court to direct the Secretary to withdraw the 10% rating that it awarded. Instead, the Court has concluded that because the veteran was not prejudiced by the award, it must affirm the Board's decision granting the extra-schedular rating. *Ante* at 97. The majority fails to explain (1) how it can proceed to affirm the Board's award after it has concluded that the Board erred in not abiding by the *Bernard* requirements to ensure due process; (2) how an award of a 10% extra-schedular rating cures any prejudice caused by the Board's failure to apply *Bernard* and consequent failure to afford the appellant the opportunity to submit to the AOJ evidence or argument on the extra-schedular-rating issue; and (3) its authority for allowing to stand the Board's award of a 10% rating (that is, by not declaring the award to be invalid), given the majority's conclusion that the Board had no authority to award such a rating and that such action was in contravention of the Secretary's own regulations.

---

**11.** Given the Board's broad statutory jurisdiction to decide all matters in a claim appealed to it from an adverse decision by a VA field station, it might even be questioned whether the Secretary would have the authority, absent *Bernard*-type prejudice to the claimant (*see supra* note 9), to preclude the BVA from awarding an extra-schedular rating in the exercise of its jurisdiction over a case appealed to it under 38 U.S.C. § 7104(a). Of course, the majority might respond that what it is holding is only that the BVA cannot award the extra-schedular rating in the first instance. Nonetheless, if the Board's statutory jurisdiction in 38 U.S.C. § 7104(a) extends to this issue as part of the increased-rating-claim "matter", then even such a "first instance" limitation might be in conflict with the statute. This analysis illustrates why no such limitation should be inferred by the Court in the absence of some clear indication by the Secretary of an intent to impose it and why it is important that deference

be accorded to the Secretary's reasonable interpretation of his own regulatory scheme (*see supra* part A). Of course, here the Secretary takes the position that the regulation "is a delegation of the Secretary's authority to render initial adjudications under section 511(a)" and "does not require the BVA, in adjudicating a claim on appeal under 38 U.S.C. § 7104(a), to seek approval from the [Chief Benefits Director] or C & P [Service] Director of the Board's determinations with respect to extra-schedular ratings", and "[w]hile a delegation of authority was considered necessary to establish the [Chief Benefits Director] and the C & P Director to approve extra-schedular ratings in initial adjudicative decisions, no delegation of authority is necessary to establish the BVA's jurisdiction to review such decisions, because the BVA's authority to review all initial decisions on claims for VA benefits is provided for by statute." Secretary's Memorandum at 5–6, 3.

Moreover, by contorting itself to avoid vacating the Board's decision on the extra-schedular-rating issue in this case so as not to take the unprecedented action of stripping away the 10% additional rating that the Board had awarded on an extra-schedular basis in its May 1992 decision (*see Green (John) v. Brown*, 5 Vet.App. 83, 84–85 (1993) (per curiam order) (Kramer, J., dissenting from denial of en banc review)), the Court has rendered advisory in nature its entire analysis regarding the Board's putative lack of authority to award such a rating in the first instance. That is because it makes no difference to the majority's outcome, as to whether the extra-schedular rating awarded by the Board is permitted to stand, which interpretation of 38 C.F.R. § 3.321(b), as to the authority of the Board to award such a rating in the first instance, is applied. *See U.S. Term Limits, Inc. v. Thornton*, —— U.S. ——, —— ——, 115 S.Ct. 1842, 1851–52, 131 L.Ed.2d 881 (1995) (conclusion in prior opinion was a holding where it was "integral to [the Court's] analysis and outcome"); *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir.1988) (distinguishing between holding and dictum in terms of whether particular conclusion is based on facts of case and is "essential to the outcome"); *McLaughlin v. Bradlee*, 803 F.2d 1197, 1204 (D.C.Cir.1986) (determination of issues which are "necessary to the outcome of the first action" forms basis of holding in that action with respect to those issues and is not "mere dictum" (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979), and *Safir v. Dole*, 718 F.2d 475, 482 (D.C.Cir.1983))).

In view of the appellant's having argued to the Court, in his December 12, 1994, memorandum, that the Board has no authority to make initial extra-schedular-rating determinations not previously addressed by the AOJ and that, in any event, the appellant should be given the opportunity to build a record before the AOJ on the extra-schedular-rating question before that question is decided in the first instance, it seems quite likely that if this matter were to be remanded for the Board to apply *Bernard* to this case, the Board would decide to allow the veteran to build such a record and present the case first to the AOJ. Such action by the Board would moot the question that the Court has extended itself to decide unnecessarily at this time—that is, whether the Board had authority to award the rating in the first instance. Hence, the Court should face this issue only if action by the Board on remand would require it to face that issue.

Finally, having affirmed the Board's grant of an extra-schedular rating in this case, the majority then goes on to state: "If the Board does proceed in compliance with the correct regulatory procedures and the appellant then continues to appeal the extra-schedular rating aspect of this claim, the Board will be required to articulate its findings of fact and sufficient reasons or bases thereupon on the extra-schedular consideration issue." *Ante* at 96–97. Given the majority's affirmance of the rating, it is unclear how the Board is to "proceed in compliance" with any regulation or how the appellant can "continue[ ] to appeal" the rating. The majority has not remanded the extra-schedular-rating issue under *Bernard*, as it should do, and so there is no basis on which the Board can proceed unless it decides sua sponte to reconsider the increased-rating claim after issuance of the Court's mandate. The Court's affirmance of the Board's 10% rating otherwise brings this particular rating-increase claim to a close.

For the foregoing reasons, I respectfully dissent to the extent I have indicated above.