SCHOELEN, Judge,
concurring:
Although I concur in the majority’s ultimate holding, I respectfully dissent from the part of the decision that discusses the respective roles of the Director of C & P and the RO in cases meriting extraschedu-lar consideration. The majority adopted the Secretary’s position at oral argument that the Director of C & P is authorized to review whether the RO or the Board appropriately referred the appellant’s case for extraschedular consideration-in effect, the analysis required by Thun steps 1 and 2. See Thun v. Peake, 22 Vet.App. 111, 115-16 (2008). I believe that the Secretary’s interpretation of the C & P director’s province in this respect is inconsistent with 38 C.F.R. § 3.321(b)(1) (2008), and therefore is entitled to little, if any, deference. See Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (confirming that an agency’s interpretations of its own regulations is “controlling unless ‘plainly erroneous or inconsistent with the regulation’ ”) (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989)); Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (declining to defer to “agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice”).
As this Court noted in Floyd v. Brown, “the determination involving an increased disability rating on an extra[ Jschedular basis is subject to the procedural requirements laid out in 38 C.F.R. § 3.321(b)(1).” Floyd, 9 Vet.App. 88, 95 (1996). To begin, *431 the RO or Board must determine that the “schedular evaluations are ... inadequate.” 38 C.F.R. § 3.321(b)(1); see Floyd, 9 Vet.App. at 95 (holding that § 3.321(b)(1) allows the Board to “consider[] whether referral to the appropriate first-line officials is required”) (emphasis omitted) (emphasis added). As the Court explained in Thun, such determination by the Board or RO involves a two-step inquiry. Thun, 22 Vet.App at 115-116. First, the RO or the Board must compare “the level of severity and symptomatology of the claimant’s service-connected disability with the established criteria found in the rating schedule for that disability.” Id. at 115. Second, “if the schedular evaluation does not contemplate the claimant’s level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant’s exceptional disability picture exhibits other related factors such as those provided by the regulation as ‘governing norms.’ ” Id. at 115-16; accord Floyd, 9 Vet.App. at 97 (“As written, 38 C.F.R. § 3.321 provides a criterion (‘an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards’) for determining whether extra[ ]sehedular consideration is warranted.”) (emphasis added).
“Where the schedular evaluations are found to be inadequate,” the RO or Board must then submit the case to the Director of C & P. 38 C.F.R. § 3.321(b)(1); Floyd, 9 Vet.App. at 95 (“[T]he correct course of action for the Board in extra[ ]schedular consideration cases such as this one is to raise the issue and remand it for the proper procedural actions outlined in 38 C.F.R. § 3.321(b)(1).”). I see nothing in the regulation to enable the Director of C & P to question whether the RO or Board properly found the schedular evaluations to be inadequate. Instead, upon submission by the RO or Board, the Director of C & P is authorized only to “approve ... an extra[ ]schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability.” 38 C.F.R. § 3.321(b)(1). As the Floyd Court explained, “38 C.F.R. § 3.321(b)(1) acts as a funnel to channel requests for an extra[ ]schedular rating through certain officials who possess the delegated authority to assign such a rating.” Floyd, 9 Vet.App. at 95.
Such delegation of authority is appropriate, given the respective roles of the Director of C & P and the RO and the Board in adjudicating claims for VA benefits. Specifically, the Director of C & P has been delegated the authority to draft the rating schedule, based “as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations.” 38 U.S.C. § 1155; see also 38 U.S.C. § 501(a); 38 C.F.R. §§ 2.6(b)(1), 3.100 (2008). The Director of C & P’s expertise is in determining the average earning capacity impairment due exclusively to the service-connected disability. See 38 C.F.R. § 3.321(b)(1). This makes the Director of C & P uniquely suited to determining what extraschedular rating level is warranted. On the other hand, the RO and the Board have expertise in applying the facts of each respective case to the rating schedule. See Moore v. Nicholson, 21 Vet.App. 211, 218 (2007) (holding that it is the job of a rating examiner to interpret medical reports of record and determine “[h]ow [the appellant’s] disabilities translate into a potentially compensable disability”); 38 U.S.C. §§ 511, 7104, 7703; 38 C.F.R. §§ 4.1 (“This rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to *432 military service.”), 4.2 (“It is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present.”), 4.7 (“Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating.”), 20.101(a) (2008) (“[T]he Board is bound by applicable statutes, the regulations of the Department of Veterans Affairs and precedent opinions of the General Counsel of the Department of Veterans Affairs.”); see also Bernard v. Brown, 4 Vet.App. 384, 390 (1993) (“Under the governing statutes and regulations, the Board’s jurisdiction is limited to deciding questions in ‘appeals’ of decisions by the Secretary or his delegates.”) (citing 38 U.S.C. § 7104). Unlike the Director of C & P, it is the province of the RO and Board to engage in fact-finding in the first instance, which makes them the best entities within VA to assess the claimant’s level of disability and symptomatology and to determine whether the schedular evaluation contemplates those symptoms, and whether the claimant’s disability picture exhibits other related factors such as those provided by the regulation as “governing norms.” Hensley v. West, 212 F.3d 1255, 1263 (2000) (citing 38 U.S.C. § 7261(a)(4), (c)); see also Thun, 22 Vet.App. at 115; Moore, 21 Vet.App. at 219 (“Rating specialists determine, through the rating schedule, the effect of a disability on a claimant’s ability to earn a living.”). By sanctioning the Director of C & P’s analysis of the factors already considered by the RO or Board, the majority effectively transforms the Director of C & P into a fact-finder.
Further, authorizing the Director of C & P to overrule the Board’s findings with respect to the adequacy of the schedular evaluations would frustrate the Board’s appellate authority. See 38 U.S.C. § 7104(a). Similarly, if the Director of C & P is able to set aside the RO’s findings with respect to the first two Thun, supra, steps, the RO would be handcuffed in its ability to adequately compensate a veteran. See 38 C.F.R. § 4.2.
I would hold that the Secretary’s position in this respect is inconsistent with both administrative practice and 38 C.F.R. § 3.321(b)(1); accordingly the Court is not required to defer to the Secretary’s position. See Auer and Georgetown Univ. Hosp., both supra. Therefore, I respectfully concur with the majority’s decision, but not its discussion pertaining to the role of the Director of C & P.