Citation Nr: 1302156 
Decision Date: 01/18/13 Archive Date: 01/23/13

DOCKET NO. 07-20 571 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New York, New York


THE ISSUES

1. Entitlement to an initial rating higher than 20 percent for diabetes mellitus.

2. Entitlement to an increased initial rating for peripheral neuropathy of the right lower extremity, rated as 20 percent prior to March 6, 2006, and as 40 percent disabling thereafter.

3. Entitlement to an increased initial rating for peripheral neuropathy of the left lower extremity, rated as 20 percent prior to March 6, 2006, and as 40 percent disabling thereafter.


REPRESENTATION

Appellant represented by: Disabled American Veterans




ATTORNEY FOR THE BOARD

R. Erdheim, Counsel


INTRODUCTION

The Veteran served on active duty from January 1963 to January 1966. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a December 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in New York, New York, that granted service connection for diabetes mellitus, type II, right lower extremity peripheral neuropathy and left lower extremity peripheral neuropathy, effective July 13, 2005. An initial 20 percent rating was assigned for the Veteran's diabetes mellitus and separate 10 percent ratings were assigned for the Veteran's right and left lower extremity peripheral neuropathy. 

In May 2006, the RO granted an earlier effective date of July 13, 2004, for the grant of service connection for diabetes mellitus, type II, right lower extremity peripheral neuropathy and left lower extremity peripheral neuropathy. 

In May 2009, the RO increased the Veteran's service-connected right and left lower extremity peripheral neuropathy from 20 to 40 percent disabling, effective March 6, 2006.

In December 2010, the Board remanded the claims for additional development.


FINDINGS OF FACT

1. Since July 13, 2004, the effective date of service connection, the Veteran's diabetes mellitus has required daily oral medication and diet restrictions, but regulation of activities is not required. 

2. Since July 13, 2004, the effective date of service connection, the Veteran's peripheral neuropathy of the right lower extremity has been manifested by constant numbness and pain, with loss of feeling from the knee down and foot drop. There has been no evidence of marked muscular atrophy. 

3. Since July 13, 2004, the effective date of service connection, the Veteran's peripheral neuropathy of the left lower extremity has been manifested by constant numbness and pain, with loss of feeling from the knee down and foot drop. There has been no evidence of marked muscular atrophy. 

4. From July 13, 2004, to June 11, 2007, the Veteran's peripheral neuropathy of the right upper extremity was manifested by moderate incomplete paralysis of the ulnar nerve with subjective symptoms of loss of grip, pain, and numbness, with objective findings of diminished sensation to pinprick testing and loss of grip strength. Severe symptoms such as trophic changes, motor loss, or complete paralysis was not shown. 

5. Since June 11, 2007, the Veteran's peripheral neuropathy of the right upper extremity has been manifested by moderately-severe incomplete paralysis of the ulnar nerve with subjective symptoms of loss of grip, pain, and numbness, with objective findings of diminished sensation to pinprick testing, loss of reflexes, and loss of grip strength. Complete paralysis has not been shown. 

6. From July 13, 2004, to June 11, 2007, the Veteran's peripheral neuropathy of the left upper extremity was manifested by moderate incomplete paralysis of the ulnar nerve with subjective symptoms of loss of grip, pain, and numbness, with objective findings of diminished sensation to pinprick testing and loss of grip strength. Severe symptoms such as trophic changes, motor loss, or complete paralysis was not shown. 

7. Since June 11, 2007, the Veteran's peripheral neuropathy of the left upper extremity has been manifested by moderately-severe incomplete paralysis of the ulnar nerve with subjective symptoms of loss of grip, pain, and numbness, with objective findings of diminished sensation to pinprick testing, loss of reflexes, and loss of grip strength. Complete paralysis has not been shown. 

8. Since July 13, 2004, the Veteran's diabetic retinopathy has been primarily manifested, at worst, by a corrected visual acuity of 20/20 in one eye and 20/20 in the other eye. There is evidence of active diabetic retinopathy. The disability has not resulted in any incapacitating episodes, visual field loss, or aphakia. 


CONCLUSIONS OF LAW

1. The criteria for an evaluation in excess of 20 percent for diabetes mellitus with erectile dysfunction have not been met. 38 U.S.C.A. § 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. 3. 159, 4.119 Diagnostic Code (DC) 7913 (2012). 

2. From July 13, 2004, to March 6, 2006, the criteria for an increased 40 percent rating for moderately severe peripheral neuropathy of the right lower extremity have been met. 38 U.S.C.A. § 1155 , 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. § 3.159, 4.124a, DC 8520 (2012).

3. Since March 6, 2006, the criteria for a rating in excess 40 percent for peripheral neuropathy of the right lower extremity have not been met. 38 U.S.C.A. § 1155 , 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. § 3.159, 4.124a, DC 8520 (2012).

4. From July 13, 2004, to March 6, 2006, the criteria for an increased initial 40 percent rating for moderately severe peripheral neuropathy of the left lower extremity have been met. 38 U.S.C.A. § 1155 , 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. § 3.159, 4.124a, DC 8520 (2012).

5. Since March 6, 2006, the criteria for a rating in excess 40 percent for peripheral neuropathy of the left lower extremity have not been met. 38 U.S.C.A. § 1155 , 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. § 3.159, 4.124a, DC 8520 (2012).

6. From July 13, 2004, to June 11, 2007, the criteria for an increased 30 percent rating for moderate peripheral neuropathy of the right upper extremity have been met. 38 U.S.C.A. § 1155 , 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. § 3.159, 4.124a, DC 8616 (2012).

7. Since June 11, 2007, the criteria for a rating in excess of 40 percent rating for peripheral neuropathy of the right upper extremity have not been met. 38 U.S.C.A. § 1155 , 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. § 3.159, 4.124a, DC 8616 (2012).

8. From July 13, 2004, to June 11, 2007, the criteria for a rating in excess of 20 percent for peripheral neuropathy of the left upper extremity have not been met. 38 U.S.C.A. § 1155 , 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. § 3.159, 4.124a, DC 8616 (2012).

9. Since June 11, 2007, the criteria for a rating in excess of 30 percent rating for peripheral neuropathy of the left upper extremity have not been met. 38 U.S.C.A. § 1155 , 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. § 3.159, 4.124a, DC 8616 (2012).

10. The criteria for an increased 10 percent rating for the Veteran's diabetic retinopathy have been met. 38 U.S.C.A. § 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. § 3.159, 4.84, DCs 6079 (2012).






REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations require VA to provide claimants with notice and assistance in substantiating a claim. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). Proper VCAA notice must inform the claimant of any information and evidence not in the record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183, 186 (2002). 

These notice requirements apply to all five elements of a service connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Proper VCAA notice must be provided to a claimant prior to the initial unfavorable decision on the claim. Pelegrini v. Principi, 18 Vet. App. 112, 119-20 (2004). 

The Board observes that the Veteran has appealed with respect to the propriety of the initially assigned rating for his diabetes and related residuals from the original grant of service connection. VA's General Counsel has held that no VCAA notice is required for such downstream issues. VAOPGCPREC 8-2003, 69 Fed. Reg. 25180 (May 5, 2004). In addition, the Board notes that the Court held that "the statutory scheme contemplates that once a decision awarding service connection, a disability rating, and an effective date has been made, § 5103(a) notice has served its purpose, and its application is no longer required because the claim has already been substantiated." Dingess v. Nicholson, 19 Vet. App. 473, 490 (2006). In this case, the Veteran's claim for service connection for his diabetes and accompanying residuals was granted and an initial rating was assigned in the December 2005 rating decision on appeal. Therefore, as the Veteran has appealed with respect to the initially assigned rating, no additional 38 U.S.C.A. § 5103(a) notice is required because the purpose that the notice is intended to serve has been fulfilled. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

Relevant to the duty to assist, the Veteran's service treatment records and post-service VA and private treatment records have been obtained and considered. The RO received a negative response from the Social Security Administration. The Veteran has not identified any additional, outstanding records necessary to decide his pending appeal. The Board has reviewed the Veteran's virtual VA claims file. The Veteran has also been afforded VA examinations September 2005, March 2006, June 2007, and January 2011 in order adjudicate his initial rating claims. The Board finds these examinations to be adequate in order to evaluate the Veteran's diabetes and accompanying manifestations as they include an interview with the Veteran, a review of the record, and a full physical examination, addressing the relevant rating criteria. Therefore, the Board finds that the examination reports of record are adequate to adjudicate the Veteran's initial rating claims and no further examination is necessary. 

The claims were remanded in December 2010 in order to provide the Veteran with new VA examinations and to obtain any outstanding records. As described above, those actions have been accomplished. 

Thus, the Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claims. 
II. Analysis

Ratings for service-connected disabilities are determined by comparing the veteran's symptoms with criteria listed in VA's Schedule for Rating Disabilities, which is based, as far as practically can be determined, on average impairment in earning capacity. Separate diagnostic codes identify the various disabilities. 38 C.F.R. Part 4 (2012). When rating a service-connected disability, the entire history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2012). The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The Veteran's diabetes mellitus has been rated 20 percent disabling under Diagnostic Code 7913. DC 7913 provides for a 20 percent rating where the diabetes mellitus requires insulin and a restricted diet, or an oral hypoglycemic agent and a restricted diet. A 40 percent rating is warranted for diabetes mellitus requiring insulin, restricted diet, and regulation of activities. A 60 percent rating is warranted for diabetes mellitus requiring insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated. A 100 percent rating is warranted for diabetes mellitus requiring more than one daily injection of insulin, restricted diet, and regulation of activities (avoidance of strenuous occupational and recreational activities) with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated. 38 C.F.R. § 4.119, Diagnostic Code 7913 (2012). 

Complications of diabetes are evaluated separately unless they are part of the criteria used to support a 100 percent rating. Noncompensable complications are deemed part of the diabetic process. 38 C.F.R. § 4.119, Diagnostic Code 7913, Note (1)(2012). 

The Veteran contends that his activities are restricted due to his diabetic neuropathy. He contends that the pain and numbness in his feet makes it difficult to walk and is at times unbearable. He contends that he also has difficulty holding items in his hands due to his neuropathy. Beginning in March 2008, he has used a cane and leg brace due to his neuropathy. 

Private treatment records reflect that in May 2005, the Veteran had chronic, mild edema in his feet that was resolving on medication. In August 2005, the Veteran's physician stated that the Veteran's abnormal physical findings in his feet included a decreased response to vibratory and decreased response to monofilament testing, bilaterally.

On September 2005 VA examination, the Veteran denied episodes of ketoacidosis or hypoglycemic reactions. He was restricted to a diabetic diet. There was no restriction of activities. He used oral medication daily to control his diabetes. He had diabetic retinopathy and had undergone laser surgery in 2003. He had erectile dysfunction. He had chronic numbness and tingling in the lower extremities. Physical examination revealed no pedal edema or varicosities. Pulses were 2+ at the dorsalis pedis but were absent at the posterior tibia, bilaterally. There was normal deep tendon reflexes, but absent pin prick sensation, bilaterally. Skin examination was normal. The diagnosis was type II diabetes and peripheral neuropathy of the bilateral lower extremities. 

VA treatment records reflect that in November 2005, the Veteran's diabetes was under good control on his current regimen. He was consulting with a dietician. 

In January 2006, the Veteran's private physician stated that the Veteran's diabetic neuropathy caused numbness in his feet, loss of balance, and changes in the foot structure. He wore protective shoe gear.
VA treatment records reflect that in February 2006, monofilament testing showed no sensation in the feet and legs. In March 2006, he reported painful neuropathy in his legs and feet that caused constant numbness and occasional burning and tingling in the feet. He felt he could not walk more than 10 feet without pain. Sensory testing was diminished to light touch, temperature, monofilament, and vibration in a stocking pattern. Motor examination was 4/5. He was fitted for diabetic shoes and recommended for physical therapy.

On March 2006 VA examination, the Veteran reported that his feet had been numb for eight years with progressive pain. Examination showed decreased vibration in the knees. Deep tendon reflexes were 2+. Gait was normal. 

In March 2006, the Veteran's private physician stated that he Veteran had persistent pain and numbness in his upper and lower extremities. Another physician stated that due to the diabetic neuropathy in his feet and legs, he was unable to work due to poor balance, foot deformities, and numbness. 

A March 2006 nerve conduction study showed bilateral carpal tunnel syndrome as well as superimposed sensory neuropathy affected the ulnar nerve of the upper extremities, probably diabetic in origin.

VA treatment records reflect that in September 2006, the Veteran's diabetic neuropathy mostly caused numbness in the feet and hands, with rare pains in the calves and hands three times per week that was not bothersome. 

On June 2007 VA examination, the Veteran reported having bilateral foot drop, causing him to fall. He had lost positional senses as well as all feeling in his legs up to the knees and numbness in the hands and wrists. He felt that his daily activities were severely restricted because he was unable to sit or stand for a prolonged period of time. His legs would get stiff and cramp. Physical examination showed a severe motor impairment in the lower extremities. The upper extremities were weak, with 2/5 on the right and 3/5 on the left. There was loss of muscle tone in all extremities. Lower extremity strength was 2/5 on the right and 3/5 on the left. There was no feeling whatsoever in the legs up to two inches above the knees. In the upper extremities, vibration senses and positional senses were not appreciated either, or on pinprick testing. He had a complete loss of fine dexterity. 

On June 2007 VA examination, the Veteran reported that he was diagnosed with diabetes 14 years previously. He had hypoglycemic reactions about twice weekly causing him to be shaky and sweaty. He saw a dietician every three months and was on an 800 calorie diet. He had gained weight. He could not complete activities around the house because his legs would cramp up and he had lost fine dexterity in his hands. He was taking oral medications to control his diabetes. 

VA treatment records reflect that in April 2008, the Veteran was noted to have joined the MOVE weight loss program and was motivated to lose weight. In October 2008, the Veteran was noted to be on the maximum dose of medication. He was not experiencing hypoglycemia. He was not testing his sugars. He was encouraged to follow a careful diet and to maintain regular activity to control his weight. He stated that nothing worked to ease his neuropathy pain. He was no longer taking Neurontin because it was not effective and caused drowsiness. He used a cream applied to the affected areas. In April 2009, the Veteran reported bilateral foot drop, imbalance status post multiple falls, and a gait disorder due to his peripheral neuropathy. He was walking with a cane. He was able to drive his car. He had participated in physical therapy to strengthen his lower extremities and work on balance. In May 2010, the Veteran had numbness, burning, and tingling in the feet for which he applied a salve that did not help. Physical examination showed palpable pedal pulses in the lower extremities without erythema. There was +1 pitting edema, bilaterally. Muscle strength was normal. There was decreased sensation. 

On January 2011 VA examination, the Veteran denied history of hospitalizations for his diabetes. There was no restriction of activities to avoid hypoglycemia. He was restricted in his activities due to his diabetes and peripheral neuropathy. He could only walk half a block and he walked with a cane. He would have frequent falls. He was following a low carbohydrate diet. His weight was stable. He denied having erectile dysfunction. He had hypertension. He reported intermittent tingling, numbness, and paresthesia, mostly in the lower extremities but also in the upper extremities. Physical examination revealed normal deep tendon reflexes in the upper extremities, with +1 decreased triceps. Ankle jerks were +1. Sensory examination showed moderately decreased pinprick and light touch sensation in both upper and lower extremities mostly on the hands, legs, and feet. There was also moderate decreased vibration sense in the feet. The assessment was moderately severe peripheral neuropathy of both upper and lower extremities. 

First, the Board finds that a higher 20 percent rating for diabetes mellitus is not warranted. In order to meet the criteria for a higher rating of 40 percent, the Veteran must have been told by a physician that he should avoid any strenuous occupational or recreational activities. 38 C.F.R. § 4.119, Diagnostic Code 7913 (2012). The available evidence does not support the finding that the Veteran has been prescribed or advised to avoid strenuous occupational and recreational activities due to his diabetes, as is required in order to warrant a higher rating of 40 percent. Although the Veteran has consistently stated that he was limited in his ability to complete many activities due to his neuropathic symptoms, and his physicians have also supported those observations, such limitation does not equate to a medical prescription for the avoidance of any strenuous occupational or recreational activity due to his diabetes. The Veteran's limitations due to his neuropathy are separately compensated under the rating criteria pertaining to neuropathy. Moreover, the Veteran has been advised that he should exercise as shown in the VA records encouraging exercise and weight reduction. He has not suffered from hypoglycemic episodes due to movement. Thus, he does not meet the criterion requiring regulation of activity so as to warrant a 40 percent evaluation. 

Next, the Board will evaluate the Veteran's peripheral neuropathy of the upper and lower extremities. In rating peripheral nerve injuries and their residuals, attention should be given to the site and character of the injury, the relative impairment and motor function, trophic changes, or sensory disturbances. 38 C.F.R. § 4.120 (2012). Under 38 C.F.R. § 4.124a, disability from neurological disorders is rated from 10 to 100 percent in proportion to the impairment of motor, sensory, or mental function. With partial loss of use of one or more extremities from neurological lesions, rating is to be by comparison with mild, moderate, severe, or complete paralysis of the peripheral nerves. The term incomplete paralysis indicates a degree of lost or impaired function substantially less than the type of picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. 

When the involvement is only sensory, the rating should be mild, or at most, moderate in degree. In rating peripheral nerve disability, neuritis, characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated on the scale provided for injury of the nerve involved, with a maximum equal to severe, incomplete paralysis. The maximum rating to be assigned for neuritis not characterized by organic changes referred to in this section will be that for moderate incomplete paralysis, or with sciatic nerve involvement, for moderately severe incomplete paralysis. 38 C.F.R. § 4.123 (2012). 

The Veteran's peripheral neuropathy of the right and left lower extremities are presently rated as 20 percent disabling prior to March 6, 2006, and as 40 percent disabling thereafter, under DC 8599-8520. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires the use of an additional diagnostic code to identify the basis for the rating assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27 (2012). DC 8520 pertains to complete and incomplete paralysis of the sciatic nerve. 38 C.F.R. § 4.124a, DC 8520. 

The criteria for evaluating the severity or impairment of the sciatic nerve is set forth under Diagnostic Codes 8520, 8620, and 8720. Disability ratings of 10 percent, 20 percent and 30 percent are assignable for incomplete paralysis which is mild, moderate or severe in degree, respectively. A maximum 40 percent rating is warranted for complete paralysis of the sciatic nerve, with the foot that dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost. 38 C.F.R. § 4.124a, DC 8520, 8620, 8720 (2012). 

The Veteran's peripheral neuropathy of the right and left upper extremities are presently rated under DC 8512, which contemplates the lower radicular group. There appears to be a typographical error in the July 2009 rating decision stating that the right upper extremity is rated under 8515 and the left upper extremity is rated under 8512. For, the body of the decision referred to the lower radicular group for both extremities, 8512, and that criteria conforms with the percentages awarded. 

However, the Board finds that the more appropriate code is DC 8616, which contemplates the ulnar nerve. Specifically, on March 2006 nerve conduction study, the Veteran's delayed ulnar sensory conduction in both hands is what indicated sensory diabetic neuropathy. The lower radicular group has not been identified as the source of his diabetic neuropathy. Thus, the Board finds 8516 is more appropriate and does not contradict medical evidence in the file. Moreover, rating the Veteran under DC 8616 does not change his current ratings, but rather offers the option of an increased rating.

The criteria for evaluating the severity or impairment of the ulnar nerve is set forth under Diagnostic Codes 8516, 8616, and 8716. Under DC 8616 and 8716, a 10 percent rating is warranted for mild incomplete paralysis of the ulnar nerve. A 20 percent rating is warranted for moderate incomplete paralysis of the minor extremity. A 30 percent rating is warranted for moderate incomplete paralysis of the ulnar nerve in the major extremity. A 30 percent rating requires severe incomplete paralysis of the ulnar nerve in the minor extremity, and a 40 percent rating is warranted for severe incomplete paralysis of the ulnar nerve in the major extremity. Under DC 8516, complete paralysis of the ulnar nerve includes griffin claw deformity, due to flexor contraction of ring and little fingers, atrophy very marked in dorsal interspace and thenar and hypothenar eminences; loss of extension of ring finger and little fingers (or reverse), cannot abduct thumb; flexion of wrist weakened. 38 C.F.R. § 4.124a, DC 8516. Diagnostic Codes 8616 and 8716 address the criteria for evaluating paralysis and neuralgia of the median nerve, respectively. 

First, the Board finds that an increased 40 percent rating is warranted for both the right and left lower extremities prior to March 6, 2006. Such is the case because the Veteran's lower extremity symptoms, manifested by an inability to feel sensation below the knees, absent vibration sensation, and absent reflexes, have been ongoing since the beginning of the appeal period. For example, on September 2005 VA examination, the Veteran was experiencing chronic numbness and tingling in his lower extremities. A few months later, on March 2006 VA examination, it was noted that he had decreased vibration in the knees. He reported that his feet had been numb for eight years and had become progressively worse and painful. The private treatment records dated in 2005 also demonstrate edema in the feet only controlled with medication. In August 2005, his physician stated that he had decreased vibration and monofilament testing in both legs. Throughout that time period, monofilament testing was shown to be absent. In January 2011, the disability was assessed to be moderately severe. Accordingly, the Board finds that the Veteran's peripheral neuropathy of the lower extremities was moderately severe prior to March 2006 and throughout the appeal period. Significantly, there is no real indication of a sudden worsening of symptoms, but rather his feet had been completely numb for many years. In that regard, his lower extremity neuropathy has been shown to exhibit moderately severe symptoms throughout the appeal, to include a lack of sensation in the feet, the need for a cane, reports of frequent falls, and constant pain in the legs. Thus, the Board finds that 40 percent ratings for moderately severe incomplete paralysis of the sciatic nerve, for the right and left lower extremities, has been warranted since July 13, 2004, the effective date of service connection. However, a higher 60 percent rating is not warranted for either extremity because the medical evidence has not shown evidence of marked muscular atrophy at anytime, a necessary requirement for the higher rating. 

With regard to the upper extremities, the Board finds that prior to June 11, 2007, the Veteran's peripheral neuropathy in both extremities was moderate in degree and that since June 11, 2007, it was severe in degree, which is reflected in his current ratings. Such is the case because prior to June 11, 2007, the Veteran's upper extremity symptoms were described as lesser than those of his lower extremities, with major manifestations being numbness in the hands. The Veteran was primarily concerned with his lower extremity symptoms throughout this period and the medical records have limited findings with regard to the upper extremities. In 2006, he reported intermittent numbness in the hands and pains that occurred three times per week. Accordingly, when rated under DC 8616, an increased rating of 30 percent for the right upper extremity is warranted prior to June 11, 2007, so that both upper extremities are rated as moderate. His left upper extremity, rated as 20 percent disabling prior to June 11, 2007, would not change under DC 8616. 

Since June 11, 2007, the symptoms in his upper extremities worsened, and on VA examination, he was assessed to have loss of muscle tone and weakness in both hands and arms. Pinprick and vibration testing were absent. He had a compete loss of fine dexterity and when asked to pick up a pen from the table such was difficult for him. In January 2011, his upper extremity neuropathy was described as moderately severe in degree. Thus, he is appropriately rated for severe neuropathy as 40 and 30 percent disabling under DC 8616, for the right and left hand respectively, since June 11, 2007. Ratings higher than severe are not warranted. Further, complete paralysis has not been shown. Specifically, he does not suffer from griffin claw, atrophy very marked, or loss of range of motion of the fingers to the degree necessary for a higher rating. 

With regard to his diabetic retinopathy, the Veteran is currently rated under Diagnostic Code 6079, which pertains to impairment of visual acuity. 

During the pendency of the appeal, the criteria for rating eye disabilities changed. However, because the Veteran filed his claim prior to December 10, 2008, the appeal will be considered under the old criteria. 73 Fed. Reg. 66543 (Nov. 10, 2008). 

DC 6006 is also pertinent to the analysis, and pertains to retinitis. The Rating Schedule does not contain a specific diagnostic code for diabetic retinopathy. However, where an unlisted condition is encountered it is permissible to rate it under a closely related disease or injury, in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous. 38 C.F.R. § 4.20 (2012). In this case, the Board finds that 38 C.F.R. § 4.84, DC 6006, which pertains to retinitis, is the most closely analogous diagnostic code. Diagnostic Codes 6000 through 6009, in chronic form, are to be rated from 10 percent to 100 percent disabling for impairment of visual acuity or loss of field of vision, pain, rest-requirements, or episodic incapacity, combining an additional rating of 10 percent during continuance of active pathology. A minimum rating of 10 percent is to be assigned during active pathology. 38 C.F.R. § 4.84, DCs 6000-6009 (2008). 

A compensable rating for loss of visual acuity requires that corrected vision be 20/40 or worse in one eye and 20/50 or worse in the other. 38 C.F.R. § 4.84(a), Diagnostic Codes 6078, 6079. The ratings increase in 10 percent increments according to the levels of vision impairment with the greatest award of 100 percent assignable for visual acuity of 5/200 in each eye. 38 C.F.R. § 4.84(a), Diagnostic Codes 6063-6078 (2008). 

The Board finds that a 10 percent rating for diabetic retinopathy is warranted. On September 2005 VA examination, corrected visual acuity was 20/20. The diagnosis was diabetic retinopathy. VA treatment records reflect that in December 2010, eye examination resulted in a diagnosis of moderate non-proliferative diabetic retinopathy. On June 2012 VA examination, the Veteran reported that he still had retinopathy despite having had laser surgery. Corrected visual acuity was 20/40 or better. The diagnosis was retinopathy with no decrease in visual acuity or other visual impairment. Thus, the evidence demonstrates that throughout the appeal period, the Veteran has suffered from active retinopathy. Thus, a 10 percent rating for the active disease process is warranted. However, he has not been shown to suffer from visual acuity loss that would warrant a compensable rating. 

Lastly, on 2005 VA examination, he reported erectile dysfunction, but on January 2011 VA examination, there was no indication of erectile dysfunction. However, a review of the records is negative for an indication of penile deformity. Thus, it does not appear that the Veteran suffers from accompanying erectile dysfunction that would warrant a compensable rating as a manifestation of his diabetes mellitus. See 38 C.F.R. § 4.115b, Diagnostic Code 7522 (2012).

The Board has considered whether a higher rating might be warranted for any period of time during the pendency of this appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

III. Other Considerations

First, the Board notes that the Veteran is already in receipt of a TDIU as well as a 100 percent scheduler rating. 
Next, an extra-schedular disability rating is warranted if the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that application of the regular schedular standards would be impracticable. 38 C.F.R. § 3.321(b)(1). 

In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the Court explained how the provisions of 38 C.F.R. § 3.321 are applied. Specifically, the Court stated that the determination of whether a claimant is entitled to an extra-schedular rating under § 3.321 is a three-step inquiry. First, it must be determined whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. In this regard, the Court indicated that there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. 

Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization." Third, when an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extra-schedular rating. Id. 

The Board has carefully compared the level of severity and symptomatology of the Veteran's service-connected diabetes and diabetic complications with the established criteria found in the rating schedule. As discussed in detail previously, the Veteran's symptomatology is fully addressed by the rating criteria under which such disability is rated. There are no additional symptoms that are not addressed by the rating schedule. With regard to his peripheral neuropathy of this lower extremities, his most severe disability, the Board finds that the rating schedule compensates for his moderate and severe symptoms. Moreover, he is able to drive and to walk with a walker. He was also noted to work as an electrician on the most recent VA examination, indicating that he is able to use his legs to the extent necessary to perform employment. Therefore, the Board finds that rating criteria reasonably describes the Veteran's disability level and symptomatology for his service-connected disabilities. As such, the Board finds that the rating schedule is adequate to evaluate the Veteran's disability picture. Moreover, to the extent that the Veteran's diabetes and diabetic complications may interfere with his employability, such interference is addressed by the schedular rating criteria. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Therefore, the Board finds that there are no attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization. Consequently, the Board concludes that referral of this case for consideration of an extra-schedular rating is not warranted. Id.; Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996). 


ORDER

A rating in excess of 20 percent for diabetes mellitus is denied. 

For the period from July 13, 2004, to March 6, 2006, an increased 40 percent rating for peripheral neuropathy of the right lower extremity is granted.

For the period from July 13, 2004, to March 6, 2006, an increased 40 percent rating for peripheral neuropathy of the left lower extremity is granted.

Since March 6, 2006, a rating in excess of 40 percent for peripheral neuropathy of the right lower extremity is denied.

Since March 6, 2006, a rating in excess of 40 percent for peripheral neuropathy of the left lower extremity is denied.

For the period from July 13, 2004, to June 11, 2007, an increased 30 percent rating for peripheral neuropathy of the right upper extremity is granted.

For the period from July 13, 2004, to June 11, 2007, an a rating in excess of 20 percent for peripheral neuropathy of the left upper extremity is denied.

Since June 11, 2007, a rating in excess of 40 percent for peripheral neuropathy of the right upper extremity is denied.

Since June 11, 2007, a rating in excess of 30 percent for peripheral neuropathy of the left upper extremity is denied.

An increased 10 percent rating for diabetic retinopathy is granted.



____________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs